UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80176-ROSENBERG/HOPKINS

ELLIS PARKER,

    Plaintiff,

v.

JOHN T. MORIARTY,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 54] and Plaintiff's cross Motion for Summary Judgment [DE 59]. Both motions have been fully briefed. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

## II. DISPUTED AND UNDISPUTED FACTS

Plaintiff is the owner of an apartment unit. Defendant is a code enforcement officer for the Town of Palm Beach. On February 11, 2014, Defendant received a complaint from a resident at Plaintiff's apartment complex. The resident complained about renovations being done in Plaintiff's apartment. Plaintiff did not have a permit for renovations, and Defendant investigated.

Upon arriving, Defendant observed loud noises coming from Plaintiff's unit and a "trail of construction dust." DE 64 at 1. Defendant requested backup in the form of police officer

assistance. Soon thereafter, Defendant, together with two officers, approached the door to Plaintiff's unit. The parties dispute subsequent events.[1] According to Defendant, Defendant knocked on the door and workers inside the unit invited Defendant to enter. According to Plaintiff, Defendant simply entered the unit without permission. Plaintiff was not present. Defendant took pictures of the renovations in Plaintiff's unit. A subsequent code enforcement hearing found Plaintiff to be in violation of applicable building codes.

Plaintiff filed this suit on February 14, 2017 against Defendant and against the Town of Palm Beach. On June 19, 2017, the Court dismissed the Town from this case with prejudice. After the Court's dismissal, only a single count in Plaintiff's Amended Complaint remained: a count against Defendant for an unlawful search and seizure under 42 U.S.C. § 1983. On January 16, 2018, Plaintiff and Defendant filed the cross motions for summary judgment presently before the Court.

### III. ANALYSIS

Defendant's central argument in his Motion for Summary Judgment is that he is entitled to qualified immunity. The Court addresses that argument below before separately addressing the different grounds upon which Defendant's qualified immunity could rest.[2]

---

[1] Because Plaintiff has failed to comply with the Court's order of requirements for citations on summary judgment, it is extremely difficult for the Court to ascertain which facts Plaintiff contests in this case. The Court has been able to ascertain that Plaintiff disputes whether Defendant's entrance into his property was consensual. All other facts referenced in this Order are either admitted by Plaintiff or deemed admitted by Plaintiff. *See* Local Rule 56.1(b).

[2] The Court declines to address or rule upon Defendant's arguments premised upon res judicata and upon the *Heck* doctrine.

## A. QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity. The purpose of qualified immunity is to ensure that government actors are not required to err on the side of caution because they fear being sued. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Qualified immunity gives "breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). The decision to inspect a home or apartment is a discretionary function within the official responsibilities of law enforcement officers. "When we assess whether an act is discretionary, we ask whether the government employee was (a) performing a legitimate job-related function (b) through means that were within his power to utilize." *Brock v. City of Zephyrhills*, 232 F. App'x 925, 927 (11th Cir. 2007) (citing *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). The act of performing a search of a residence qualifies as a discretionary function of a law enforcement officer. *See, e.g.*, *id.* Plaintiff concedes that Defendant was acting within the scope of his authority, and the Court can ascertain no basis to conclude otherwise. *See* DE 55-1 at 88:1-3.

When an officer acts within his discretionary authority, the burden shifts to the plaintiff to show a non-entitlement to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). To show that qualified immunity does not apply, a plaintiff must demonstrate two factors: (1) that the allegations, if true, allege a violation of a constitutional right; and (2) if so, whether the allegedly violated right was "clearly established" at the time of the defendant's misconduct. *al-Kidd*, 563 U.S. at 735. Both factors must be satisfied for an official to lose qualified immunity. *See Leslie v. Hancock County Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).

Law and rights may be "clearly established" by showing: (1) a decision in a materially similar case; (2) a broad, clearly established principle that should control the current case's novel facts; or (3) the conduct in question so obviously violates the Constitution as to render prior law interpretations unnecessary. *Id.* Decisions from the Supreme Court, the Eleventh Circuit, and the Florida Supreme Court clearly establish laws or rights. *See id.* However, any materially similar case law must pre-date the conduct at issue and "truly compel the conclusion that the plaintiff had a right under federal law." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994). A decision from a different circuit cannot constitute "clearly established law" in the Eleventh Circuit. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1205-06 (11th Cir. 2012). Furthermore, the Supreme Court has repeatedly told courts that high level, general principles do not "clearly establish" law, because high level statements are "of little help" in determining the "violative nature" of particular conduct. *al-Kidd*, 563 U.S. at 742. In other words, existing precedent must put the statutory or constitutional question beyond debate. *Id.* at 741.

Here, the Court concludes that Defendant is entitled to qualified immunity because existing precedent has not put the constitutional questions in this case beyond debate. First, it would have been unclear to Defendant whether his alleged actions resulted in more than a *de minimis* constitutional injury to Plaintiff. Second, even if Plaintiff did suffer a deprivation of his constitutional rights, the state of the law as to Plaintiff's privacy interest in his vacant unit, in the middle of renovation, is uncertain. The Court discusses each of these points separately below.

### B. **THE SEVERITY OF PLAINTIFF'S ALLEGED CONSTITUTIONAL INJURY**

Although there is a dispute of material fact in the record as to whether Defendant's search of Plaintiff's unit was consensual, Defendant argues that if there was an intrusion, the intrusion

resulted in a *de minimis* injury. Trespass, by itself and without more, is not sufficient to establish a constitutional violation. *United States v. Karo*, 468 U.S. 705, 713 (1984). A plaintiff must establish more than a *de minimis* injury on any constitutional interest. *See United States v. Jacobsen*, 466 U.S. 109, 125 (1984).

An example of a *de minimis* constitutional injury is found in *Porter v. Jewell*, 453 F. App'x 934 (11th Cir. 2012). In *Porter*, police officers went to the plaintiff's house to do a welfare check and returned the next day to inspect the apartment. *Id.* at 936. Afterwards, the plaintiff alleged that an officer had banged on and kicked her apartment door several times, cracking the doorframe and damaging the deadbolt. *Id.* at 937. The door was fixed, and there was no permanent damage to the door or other property of the plaintiff. *Id.* The court found that the officer's actions constituted a *de minimis* seizure, which did not rise to the level of a Fourth Amendment violation. *Id.*

Another example of *de minimis* constitutional violation is found in *Medlock v. Trustees of Indiana University*, 738 F.3d 867 (7th Cir. 2013). In *Medlock*, a student's room in an on-campus dormitory was searched by graduate assistants as part of a normal health and safety inspection of the premises. *Id.* at 869. After noticing marijuana paraphernalia, the campus police were called, who subsequently found additional marijuana and paraphernalia. *Id.* at 870. In plain view in the student's closet was a six-foot marijuana plant, which was spotted by one of the original inspectors. *Id.* The police officer then looked into the closet and spotted the plant, and left to get a warrant for an additional search of the room. *Id.* As the court noted that the officer saw what the inspectors had already seen, the officer's intrusion into the plaintiff's room was only incremental, and would bar the plaintiff's Fourth Amendment claim under the principle *de minimis non curat lex*. *Id.* at 873.

6

A third and final example of a *de minimis* constitutional violation is found in *Artes-Roy v. City of Aspen*, 31 F.3d 958, 960 (10th Cir. 1994). In *Artes-Roy*, building inspectors went to the plaintiff's home. When the plaintiff failed to produce documentation of any inspections or a copy of the building plans, a stop work order was issued. *Id.* Thereafter, inspectors went back to the home and observed that the workers were working in violation of the stop work order. *Id.* The chief inspector, Mr. Lyman, went to the front door to speak with the plaintiff-homeowner and the workers. *Id.* Mr. Lyman and the officer knocked on the door several times. *Id.* After knocking, and cracking the door open a little bit, a worker (according to Mr. Lyman) answered and motioned Mr. Lyman into the home, which he entered. *Id.* While the officer was still near the entryway, he was asked to leave by the plaintiff, and he promptly did. *Id.* at 961. The plaintiff alleged she hurt her back weeks later while bending over to pick up a pencil, which she attributed to the stress caused by the inspector's allegedly unlawful entry. *Id.* The work continued at the home, and the city officials instituted civil and criminal proceedings against the plaintiff and her husband for the violation of the stop work order. *Id.*

The district court in *Artes-Roy* found that even if there was a technical violation of the plaintiff's Fourth Amendment rights, such a violation was trivial and not above a *de minimis* level sufficient to invoke a constitutionally based remedy in court. *Id.* at 961-62. In review of the district court decision, the Tenth Circuit found that the inspector's intrusion was minimal. *Id.* at 962. Since the inspector was there to issue a citation, and not arrest the plaintiff or her workers, there was no violation of the plaintiff's rights. *Id.* The court noted that "[a] different rule would subject to liability every public official who inadvertently, or by invitation of an unauthorized person, steps inside the door of a private residence." *Id.* The court further found, that even if the

7

entry itself was a Fourth Amendment violation, the violation was *de minimis. Id.* at 963. It noted that the principle was "not that the harm is small, but there is no actionable constitutional wrong." *Id.* (citing *Hessel v. O'Hearn*, 977 F.2d 299, 304 (7th Cir. 1992)).

In response to the cases discussed above, Plaintiff argues that *Artes-Roy* is distinguishable because the inspector in that case eventually received permission to enter the residence—a fact which Plaintiff disputes in the instant case. Plaintiff's characterization of *Artes-Roy* is not correct. The parties in *Artes-Roy*, like the instant case, disputed the critical events surrounding the inspector's entrance to the property. *Id.* at 960 ("At this point factual discrepancies exist between plaintiff's deposition testimony describing crucial events at the front door of her home, and the testimony of Lyman and a police officer present at the house."). The court in *Artes-Roy* assumed that the inspector entered the plaintiff's property without consent. *Id.* at 962. Plaintiff in the instant case also emphasizes Defendant's lack of a warrant—another fact that was present in *Artes-Roy*.

Upon review, the Court concludes that the instant case bears similarities to cases in which constitutional injuries were held to be *de minimis*. Like *Artes-Roy*, this case involves an alleged constitutional injury stemming from a civil code inspector exercising his duties—Defendant did not enter Plaintiff's unit to make an arrest. Also like *Artes-Roy*, the civil code inspector in the instant case already had evidence of a code violation before he entered Plaintiff's unit—Defendant had reports from a neighbor of a renovation being conducted, Plaintiff had no permit for renovations, and Defendant observed "a trail of construction dust" accompanied by loud construction noises outside of Plaintiff's unit. DE 63 at 1. Like *Porter*, there was no permanent injury in this case to Plaintiff's property—Plaintiff's property was not damaged nor was Plaintiff

8

arrested or seized. Like *Medlock*, Defendant observed code violations by Plaintiff as part of the normal exercise of his duties and, like the student inspectors in *Medlock*, Plaintiff's code violations were observed and reported to Defendant prior to Defendant's entry into Plaintiff's unit.

In conclusion, this Court need not decide whether Plaintiff's alleged constitutional injuries were *de minimus*. This Court need only decide, for the purposes of Defendant's qualified immunity, whether Plaintiff's allegedly violated right was clearly established at the time of Defendant's alleged misconduct. As applied to the facts of the instant case, the Court is unaware of any binding authority in the Eleventh Circuit on this issue, nor has any party cited such law to this Court. In light of the case law discussed above and the similarities between that case law and the facts of the instant case, and in light of the lack of factually-analogous authority in this circuit, the Court concludes that, on the facts of this case, Defendant was not "compel[led to reach] the conclusion that the plaintiff had a right" which he violated by allegedly entering Plaintiff's unit without permission. Defendant is entitled to qualified immunity on this basis, together with other grounds discussed below.

## C. **PLAINTIFF'S REASONABLE EXPECTATION OF PRIVACY**

For an alleged search to be actionable, a plaintiff must have a reasonable expectation of privacy in the items and places that are searched. *See Rakas v. Illinois*, 439 U.S. 129 (1978). Furthermore, not only must a plaintiff have a subjective expectation of privacy, but that expectation must be one that is recognized by society as reasonable. *See id.* at 143. Courts have held that a vacant residence, or a residence under renovation, is entitled to a lesser standard of privacy. *United States v. Smith*, No. 4:07CR655, 2008 WL 2224782, at *6 (E.D. Mo. May 27, 2008) (finding that the vacancy and renovation of an apartment were factors leading to the

9

determination that there was no expectation of privacy); *Heinrichs v. Kozlowski*, No. 3:04CV1499, 2006 WL 1210881 at n.3 (D. Ct. May 5, 2006) (noting the potential issue of whether the plaintiff had an expectation of privacy in a building under renovation); *United States v. Sanford*, No. 3:06-CR-199, 2009 WL 2197373, at *6 (M.D. Ala. July 23, 2009) (finding no reasonable expectation of privacy in an abandoned house).

In *Shapiro v. City of Glen Cove*, No. CV 03-0280, 2005 WL 1076292 at *9-12 (E.D. N.Y. May 5, 2005), *aff'd* 236 F. App'x 645 (2d Cir. 2007), the plaintiff had a building which was destroyed by a storm and was in the process of being restored and renovated. While the building was largely vacant, the plaintiff housed her eleven dogs in the building. *Id.* at *1. In response to a distress call regarding the whimpering of the animals, law enforcement entered the building and removed the animals from the building. *Id.* at *3. The plaintiff admitted that she did not sleep at the home, and that there was no running water or appliances. *Id.* at *10. The court held that "while [plaintiff] may call the building her home and may subjectively consider it her home, it was not, a 'home' to anyone but [plaintiff's] eleven dogs, who do not enjoy Fourth Amendment protection. The property was a building site, for which [plaintiff] had obtained a building permit." *Id.* The court found the question of whether society found any expectation of privacy for such a building to be a novel issue for the Second Circuit. *Id.* at *11. It held "[t]he central component of whether an individual may reasonably expect that a non-residential area should be treated as a home for Fourth Amendment purposes is "whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.'" *Id.* (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)). It further held that the undisputed facts showed no "intimate activities" associated with the sanctity of a home, finding that Shapiro's actions in receiving mail, storing

10

clothing, and keeping papers and photographs were insufficient to establish a reasonable expectation of the highest degree of privacy. *Id.* at *12. Any expectation of privacy was significantly diminished. *Id.* As such, the court found that the municipal officers did not violate any clearly established privacy rights of the defendant under the Fourth Amendment. *Id.* at *18.

Similarly, in *Davis v. City of Milwaukee*, No. 13-CV-982-JPS, 2015 WL 5010459 at *3 (Aug. 21, 2015) *aff'd* 642 F. App'x 627 (7th Cir. 2016), the plaintiff owned several rental properties in the City of Milwaukee. One of the properties became vacant. *Id.* at *5. The city's Department of Neighborhood Services attempted to the inspect the property, but was unable to do so. *Id.* It issued an "Order to Correct Condition," which required the plaintiff to permit an inspection of the premises. *Id.* The plaintiff failed to comply, and a city inspector inspected the exterior of the home and other structures including the deck and garage. *Id.* at *6. In review of the facts on the defendants' motion for summary judgment, the court noted that a finding that a house was not a "home" weighed against finding a reasonable expectation of privacy in warrantless searches of the property. *Id.* at *11. Further, the court held that even if the inspector had violated the Constitution, such an injury had not been clearly established so as to defeat the inspector's claim of qualified immunity. *Id.*

The cases cited above contain similarities to the instant case. Here, Plaintiff's unit was vacant. Plaintiff did not live in the unit. The unit was under renovation. Ultimately, this Court need not decide whether Plaintiff had a reasonable expectation of privacy in his vacant apartment unit. This Court need only decide, for the purposes of Defendant's qualified immunity, whether Plaintiff's allegedly violated right was clearly established at the time of Defendant's alleged misconduct. As applied to the facts of the instant case, the Court is unaware of any binding

authority in the Eleventh Circuit on this issue, nor has any party cited such law to this Court. In light of the case law discussed above and the similarities between that case law and the facts of the instant case, and in light of the lack of factually-analogous authority in this circuit, the Court concludes that Defendant would not have known he was violating a clearly established right because Plaintiff's reasonable expectation of privacy in his vacant unit was uncertain. For these reasons, Defendant is entitled to qualified immunity.

## IV. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 54] is **GRANTED** and Plaintiff's cross Motion for Summary Judgment [DE 59] is **DENIED**.[3] Defendant shall provide a proposed final judgment in Microsoft Word format to rosenberg@flsd.uscourts.gov within two (2) days of the date of rendition of this Order. The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 8th day of March, 2018.

_____
ROBIN L. ROSENBERG
Copies furnished to Counsel of Record             UNITED STATES DISTRICT JUDGE

---

3 Plaintiff's cross Motion for Summary Judgment contains few distinct citations to legal authority, measures three pages in length, does not comply with the Court's order of requirements for motions for summary judgment at docket entry 16, does not contain a wherefore clause, contains blank and fragmented sections, and appears to argue that judgment should be entered in Plaintiff's favor as a matter of law despite the dispute of material fact in this case as to whether Defendant had permission to enter Plaintiff's unit. Because of the procedural deficiencies of Plaintiff's Motion as well as the reasons set forth in this Order, Plaintiff's Motion is denied.